## UNITED STATES v. PALMER.
### Crim. A. No. 16948.

United States District Court
E. D. Pennsylvania.
July 1, 1954.

W. Wilson White, U. S. Atty., Philadelphia, Pa., for plaintiff.

Harrop A. Freeman, Ithaca, N. Y., Walter C. Longstreth, Philadelphia, Pa., for defendant.

GRIM, District Judge.

Defendant, a member of the Society of Friends, appears without question to be a sincere conscientious objector, and under the Acts of Congress and the Selective Service Regulations he would have been entitled to a I–O classification if he had properly submitted the facts of his case to the selective service system. But this he has refused to do. He failed to register, for which he was indicted and, in November, 1950, sentenced by this court to serve a term of a year and a day in prison. He served his term in prison at Danbury, Connecticut. The day before his release from prison the warden, without his cooperation, registered him for selective service.[1] The warden transmitted his registration card to Local Board No. 60, Media, Pennsylvania. His domicile was at Concordville, Pennsylvania, which was within the area of the jurisdiction of Media Board No. 60.[2]

1. The regulations provide for this type of registration of a non-cooperative potential inductee, 32 C.F.R. Sec. 1613.41 (1949 ed.).

2. Defendant contends that his domicile was not at Concordville and not within the jurisdiction of the Media Board.

The evidence in reference to this problem is not as clear as it might be, but it indicates that from early boyhood until recent years he lived at Concordville with his parents, who still reside there. He went to California, to Ohio and, of course, to Danbury, Connecticut, for various rea-

On December 5, 1951, the Media Board sent the usual selective service questionnaire (Form No. 100) to the defendant. Four days thereafter defendant returned it to the Board unexecuted with a letter stating that he would not execute the questionnaire or otherwise cooperate with the selective service system and explaining that his religious beliefs impelled him to take this position.

On January 30, 1952, a notice was mailed to defendant ordering him to report for a physical examination on February 15, 1952. Without any request from him, on February 12, 1952, the special form (No. 150) which is provided by the selective service system for registrants who claim to be conscientious objectors was sent to defendant to give him an opportunity to present the facts of his case to the Local Board. On February 19, 1952, the Local Board received back from defendant Form 150. It was entirely unexecuted, but with it defendant submitted to the Local Board a letter which set forth substantially all the information which would have been set forth in Form 150 if defendant had executed it.

On February 14, 1952, the Local Board classified defendant I–A.

Defendant did not report for his physical examination on February 15, 1952, as he had been ordered to do on January 30th. On April 8, 1952, the Local Board sent another notice to defendant ordering him to report for a physical examination, scheduled this time for April 16, 1952. Defendant did not report for the physical examination on April 16, 1952. He has never reported for nor been given a physical examination by the selective service system.

On May 5, 1952, the Local Board mailed defendant an order to report for induction on May 20, 1952. He refused to appear at the induction station as ordered and as a result this criminal prosecution followed. The case was tried before me without a jury. Defendant was found guilty. He has filed a motion for judgment of acquittal.

Defendant has interposed several defenses. His principal defense is that the action of the Media Board in classifying him as available for military service (I–A) was beyond its jurisdiction because there was no basis in fact for the I–A classification. He points out that all the evidence indicates that he is a sincere conscientious objector and that, therefore, he should have been classified I–O. He is correct in his contention that all the evidence indicates that he is a sincere conscientious objector. The evidence also shows that he was a student in the theological school at Oberlin College in Ohio. Normally this would entitle him to a I–S classification as a student or a IV–D classification as a ministerial student.

This case raises the question whether a registrant can challenge the legality of his I–A classification as a defense in a criminal prosecution against him when he has failed and refused to exhaust his administrative remedies for securing a different classification, to submit to a physical examination, and to report for induction.

According to Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305, Billings v. Truesdell, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917, Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567, and subsequent cases, before a defendant in a criminal prosecution under the Selective Service Act of 1940 could properly raise the defense that his selective service board acted beyond its jurisdiction in denying his claim to a classification other than I–A (subject to induction), he must have completed the following procedural steps: (1) exhausted his administrative remedies for securing a different classification; (2)

sons, but none of them in my opinion indicates that he ever went away from Concordville with the intention of making a permanent home elsewhere. He went to California to be among other conscientious objectors to try to understand their point of view. He went to Ohio to study in college. He went to Connecticut to serve his prison sentence.

submitted to a physical examination to determine his fitness for military service, and (3) obeyed the order to report for induction,[3] but refused to take the oath of induction. In the recent case of Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, involving a prosecution under the Universal Military Training and Service Act of 1948, 50 U.S.C.A. Appendix, § 451 et seq., for refusal to submit to induction, the Supreme Court in its detailed statement of the facts was careful to point out that the defendant had exhausted his administrative remedies for securing a different selective service classification and that he reported to the induction center as ordered but refused to submit to induction. It is quite clear, therefore, that as a matter of administrative law the Supreme Court has held that a registrant must exhaust his administrative remedies within the selective service system and then report for induction to the induction station as a prerequisite to his raising the defense of an alleged illegal classification by the selective service system in a criminal prosecution.

Defendant has urged this court to relax the exhaustion rule in the present case, contending that the stated purposes of the Selective Service Acts of 1948 and 1951, under which the present prosecution was brought, are different from the stated purposes of the 1940 Act under which the above cited Falbo, Billings and Estep cases were decided. He contends that the Act of 1940 was in urgent preparation for war while the Acts of 1948 and 1951 were merely to maintain sufficient armed strength to deter aggression and not to prepare for war. In my opinion, the 1940 Act and the later acts, including their basic purposes, are essentially the same. Using hindsight, defendant correctly points out that the 1940 Act was in preparation for our participation in World War II. However, using the same device of hindsight, this court might say that the Act of 1948 was in preparation for the Korean War. Furthermore, the amending Act of 1951 was passed in the midst of the Korean War.

In addition to attempting to distinguish the purposes of the Selective Service Act of 1940 from those of the later acts, defendant contends that the exhaustion rule laid down by the Supreme Court in the Estep case for World War II prosecutions should not be strictly enforced during the present peacetime conditions. He argues that, although the urgent circumstances of wartime do not allow "litigious interruption of the process of selection which Congress created",[4] the national security will not be impaired during peacetime by this court's relaxation or modification of the rule that exhaustion of administrative procedures is a condition precedent to judicial determination of the defense of illegal classification in a prosecution for violation of the selective service laws. Otherwise stated, defendant contends that the applicability of the Supreme Court's exhaustion rule should depend on whether an alleged violation of the selective service laws occurs during a period of urgent wartime mobilization or during a period of less urgent peacetime military training and service.

The Supreme Court has not up to the present time modified its strict exhaustion rule. Several lower courts, however, have held[5] or indicated by way of dicta[6] that under certain circumstances the exhaustion requirement may be relaxed.

3. But cf. Gibson v. United States, 1946, 329 U.S. 338, 67 S.Ct. 301, 91 L.Ed. 331.

4. Falbo v. United States, 1944, 320 U.S. 549, 554, 64 S.Ct. 346, 349. In deciding this case the Supreme Court was faced with the problem of "reconciling basic principles of justice with military needs in wartime." 320 U.S. 549, at page 555, 64 S.Ct. at page 349 (dissenting opinion of Justice Murphy).

5. Ex parte Fabiani, D.C.E.D.Pa.1952, 105 F.Supp. 139; cf. Alicea v. United States, 1 Cir., 1950, 180 F.2d 870.

6. Schwartz v. Strauss, 2 Cir., 1953, 206 F.2d 767 (concurring opinion of Judge Frank); United States v. Tomlinson, D. C.E.D.Pa.1950, 94 F.Supp. 854, 858.

But assuming *arguendo* that the exhaustion requirement under certain circumstances may be relaxed during peacetime, the circumstances of the present case certainly do not call for any such relaxation. I hold, therefore, that the exhaustion rule laid down by the Supreme Court in the above cited cases is controlling in the present case.

Defendant has wilfully and defiantly refused to follow the administrative procedures which have been set up for his benefit. He has taken and maintained the extreme religious position that he will not comply with the selective service laws nor cooperate in any way with the selective service authorities. The Society of Friends, of which defendant is a member, officially approves but does not require its members to take defendant's extreme religious position.[7]

Defendant has already served a prison term for a previous failure to register. His present registration was effected by prison authorities pursuant to the regulations through no cooperation on his part. He has disdained to execute and submit a Form 150 which is required of any person seeking an exemption as a conscientious objector. 32 C.F.R. Sec. 1621.11. He has failed to request a student deferment (Class I–S) to which he apparently was entitled by virtue of his full-time studies at Oberlin College. 32 C.F.R. Sec. 1622.15(b). He has failed to seek a possible exemption as a divinity student (Class IV–D). 32 C.F.R. Sec. 1622.43(4).

Defendant has stated unequivocally under oath that he has refused and will continue to refuse to pursue any of the administrative procedures available to him and to obey any and all orders of selective service officials. He has consistently refused to have anything whatsoever to do with the selective service system except to write an occasional letter to his local board explaining his refusal to cooperate.

The present selective service laws and regulations do not cover a person with defendant's extreme form of conscientious objection, since they require all persons claiming exemption as conscientious objectors to assert and process their claims through the administrative machinery created by Congress. Only Congress has the power to create a new and separate procedure for conscientious objectors who, like defendant, are prevented by their religious beliefs from cooperating with the selective service system. This court must uphold the selective service laws and regulations as they are presently constituted.

I hold that defendant, Palmer, is barred in this judicial proceeding from attacking the Media Board's jurisdiction to classify him I–A, because he has failed to pursue the administrative procedures available to him. Therefore, his conviction, based on the Government's *prima facie* case, will be sustained.

The statements of fact and law in the foregoing opinion will constitute the Court's findings of fact and conclusions of law in the case.

---

7. In a Statement entitled "Freedom of Religion and the Present Draft Law", adopted by the two Philadelphia Yearly Meetings of the Religious Society of Friends, March 28 and 29, 1949, the following paragraph appears:

"We believe that *every young man who, under a sense of religious compulsion, feels that he must refuse to comply with the Draft Law, at any point, should follow the supreme authority of his inner guide.*"

In a leaflet entitled "Advices on Conscription and War" by the Religious Society of Friends in the United States, adopted by a called Meeting held at Earlham College, Richmond, Indiana, July 20–22, 1948, the following statements are included:

" * * * Friends are urged * * * to support Young Friends and others who express their opposition to conscription either by non-registration, or by registration as conscientious objectors. * * * Nevertheless, we hold in respect and sympathetic understanding all those men who in good conscience choose to enter the armed forces."